No. 14-1019

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

E.DIGITAL CORPORATION,
*Plaintiff-Appellant,*

*v.*

FUTUREWEI TECHNOLOGIES, INC.,
and HUAWEI DEVICE USA, INC.,
*Defendants-Appellees,*

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA IN CASE NO. 3:13:CV-00783, THE HONORABLE JUDGE DANA M. SABRAW

---

## CORRECTED BRIEF FOR PLAINTIFF-APPELLANT E.DIGITAL CORPORATION

---

Anton N. Handal
Pamela C. Chalk
Handal & Associates
1200 Third Avenue Suite 1321
San Diego, CA 92101
(619)544-6400

*Counsel for Plaintiff-Appellant,*
*e.Digital Corporation*

# CERTIFICATE OF INTEREST
## (Fed. Cir. R. 47.4)

Counsel for Plaintff-Appellant e.Digital Corporation certifies the following:

The full name of every party or amicus represented by me is:  e.Digital Corporation.

e.Digital Corporation is the real party in interest.

No parent company owns e.Digital Corporation and no publicly held company owns 10 percent or more of the stock of e.Digital Corporation.

The names of all law firms and the partners or associates that appeared for e.Digital Corporation in the District Court or are expected to appear in this Court are:

Anton N. Handal, Pamela C. Chalk and Gabriel G. Hedrick, all of Handal & Associates.

Respectfully submitted,

**HANDAL & ASSOCIATES**

Dated:  December 27, 2013        By:        /s/Pamela C. Chalk
                                                            Pamela C. Chalk
                                                            *Counsel for Plaintiff-Appellant*
                                                            *e.Digital Corporation*

# TABLE OF CONTENTS

I.   STATEMENT OF RELATED CASES ................................................ VI

II.  STATEMENT OF JURISDICTION ................................................ IX

III. STATEMENT OF ISSUES FOR REVIEW ...................................... XI

IV.  STATEMENT OF THE CASE ......................................................... 1

V.   STATEMENT OF THE FACTS ......................................................... 2

    A.  Introduction ............................................................................... 2

    B.  The Asserted Patents .................................................................. 2

    1.  The '774 Patent ........................................................................ 2

        a.  Assertion of The '774 Patent in the Colorado Case................... 4

        b.  Assertion of The '774 Patent in the San Diego Case................. 4

    2.  The '108 Patent ........................................................................ 5

        a.  The '108 Patent was not asserted in the Colorado Case ........... 5

        b.  Assertion of The '108 Patent in the San Diego Case................. 5

    C.  The Colorado Claim Construction Proceedings ......................... 5

    D.  Reexamination of the '774 Patent .............................................. 9

    E.  The Proceedings Before The San Diego District Court ............ 12

VI.  SUMMARY OF THE ARGUMENT .............................................. 13

VII. STANDARD OF REVIEW ............................................................. 15

VIII. ARGUMENT ................................................................................. 16

    A.  The Issues Presented With Respect To The '774 Patent Are Not Identical To Those Litigated In Colorado ....................................................... 16

    B.  The Colorado Court Construed The Disputed Terms In Light Of a Different Prosecution History ................................................................. 19

    C.  The Reexamination History Is Material To The Construction Of The Term Construed in Colorado. .......................................................................... 24

    D.  Collateral Estoppel Does Not Apply Because There Is Significant Doubt That The Colorado Court Determined Identical Issues. ............................ 27

    E.  New Claims 33 And 34 Of The '774 Patent Narrower and Not Identical To Claims 1 And 19 Litigated In The Colorado Case ................................ 29

*F.   The District Court Erred In Dismissing Out of Hand The New Claim Language.* ..................................................................................... 31

*G.   The Additional Prosecution History And Claim Language Do Not Broaden The Scope Of The Patent.* ................................................................... 31

**IX.   COLLATERAL ESTOPPEL CANNOT BE APPLIED TO THE '108 PATENT BECAUSE IT WAS NOT ASSERTED IN COLORADO AND THE INTRINSIC EVIDENCE SUBSTANTIALLY DIFFERS FROM THE '774 PATENT** ........................................................................................ 32

**X.   CONCLUSION** ........................................................................ 41

**XI.   CERTIFICATE OF COMPLAINCE** ........................................... 42

# TABLE OF AUTHORITIES

## CASES

*3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) ..................................................................25

*Al-Site Corp. v. VSI Intern., Inc.,* 174 F.3d 1308, 1322, 50 U.S.P.Q.2d (BNA) 1161, 1169 (Fed. Cir. 1999) ........................................36

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed.Cir. 2011) ..................................................................23

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F.Supp.2d 1119, 1124–25 (C.D.Cal.2005) ..................................................39

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340-1341 (Fed. Cir. 2012) .........................................................15

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) 15

*Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.,* 129 F.3d 1247, 1250-51 (Fed. Cir. 1997)................................................................33

*Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) ...........................................................................36, 42

*Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir. 1985) ..............17, 30

*Golden Bridge Technology, Inc. v. Apple Inc.*, 937 F.Supp.2d 490, 496-497 (D.Del. 2013).........................................................18

*Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983)...................21

*Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) .............................................17

*Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 477 (3d Cir. 1977)......................19

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) ....................17

*I-Flow Corp. v. Apex Medical Tech., Inc.,* 2010 WL 144405, (S.D. Cal. 2010).....33

*In re Cygnus Telecommunications Technology, LLC Patent Litigation*, 385 F.Supp.2d 1022, 1024 (N.D.Cal. 2005) ............................................22

*Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir.1995).......................38

*Kendall v. Visa USA, Inc.,* 518 F.3d 1042, 1050 (9th Cir. 2008) ..........................16

*Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266-67 (Fed. Cir. 2012).................23

*Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1348 (Fed.Cir.1991) ......................32

*Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1244, 70 U.S.P.Q.2d

(BNA) 1257, 1264 (Fed. Cir. 2004) .............................................................37, 42

*MSM Investments Co. v. Carolwood Corp.*, 70 F. Supp. 2d 1044, 1051–53 (N.D. Cal. 1999) ...............................................................................................36

*Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1376 (Fed. Cir. 1999) ................................................................................15

*Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001)…16, 17, 27

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Civ. No. 08-309, 2009 WL 4928029, at *16-17 & n. 1 (D.Del. 2009) ..........................................19

*Power Systems, Inc. v. O2 Micro Intern. Ltd.*, 2010 Markman 583960, 2010 WL 583960, *7 (N.D. Cal. 2010) .............................................................................37

*ProtectConnect, Inc. v. Leviton Mfg. Co., Inc.*  2011 WL 1559762 (S.D.Cal. 2011) .................................................................................................................23

*Robert Bosch Healthcare Systems, Inc. v. ExpressMD Solutions, LLC*, 2013 WL 752474, *3, (N.D. Cal. 2013) .......................................................................22

*St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, 2011 WL 66166, *6; 412 Fed.Appx. 270, 276 (Fed. Cir. 2011) ....................................................21

*Target Therapeutics, Inc. v. SciMed Life Systems, Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal. 1995) ..............................................................................................22

*United States Internal Revenue Serv. V. Palmer (In re Palmer),* 207 F.3d 566, 568 (9th Cir. 2000) .................................................................................................16

*Vardon Golf Co., Inc. v. Karsten Manufacturing Corp.*, 294 F.3d 1330, 1333 (Fed. Cir. 2002) ....................................................................................................15

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)..........25

**STATUTES**

35 U.S.C.A. § 121 ...............................................................................32

**REGULATIONS**

37 C.F.R. § 1.141.................................................................................32

# I.   STATEMENT OF RELATED CASES

## (Fed. Cir. R. 47.5)

The underlying case was filed in the Federal District Court, in and for the Southern District of California on April 2, 2013.   Originally titled *e.Digital Corporation v. Huawei Technologies Co., Ltd*., Case No. 3:13-cv-783 (hereafter, the "Huawei Action"), the case was fully and finally resolved and final judgment disposing of all parties' claims was entered on October 7, 2013.   Thereafter a timely Notice of Appeal was filed on October 10, 2013.

No other appeal in or from the underlying civil action in this case has been previously before this or any other appellate court.   No case known to counsel for Plaintiff-Appellant is pending in this or any other court that would directly affect or be directly affected by this Court's decision in the pending appeal.

However, in the interest of full disclosure, Appellant points out that it filed several cases in the District Court that involve one or both of the patents that are the subject of the instant appeal (United States Patent Nos. 5,491,774 ("the '774 patent") and 5,839,108 ("the '108 patent").   Only the following named cases are still pending:

- *e.Digital v. SanDisk Corporation*, Case No. 3:12-cv-2698-DMS-WVG;

- *e.Digital Corporation v. Woodman Labs, Inc.*, Case No. 3:12-cv-2699-DMS-WVG;

- *e.Digital Corporation v. Pantech Wireless, Inc.*, Case No. 3:13-cv-23-DMS-WVG;

- *e.Digital Corporation v. Research In Motion Limited*, Case No. 3:13-cv-781-DMS-WVG;

- *e.Digital Corporation v. ZTE Corporation*, Case No. 3:13-cv-782-DMS-WVG.

These cases (hereinafter, the "Unrelated Cases") have not been joined or otherwise consolidated with the present case for trial under 35 U.S.C. § 299. However, the District Court did make the following order:

> Multiple patent infringement actions were filed in this District by Plaintiff e.Digital Corporation ("e.Digital") asserting infringement of United States Patent 5,491,744 ('744 Patent), 5,742,737 ('737 Patent), 5,842,170 ('170 Patent), and 5,839,108 ('108 Patent) against over fifty Defendants. Fourteen actions remain pending. These cases have been low numbered to this District Judge and Magistrate Judge William Gallo pursuant to Civil Local Rule 40.1(d). The Court finds these cases will be most efficiently managed by coordinating them for purposes of initial infringement and invalidity contentions and claim construction. Therefore, these cases are deemed consolidated for discovery and claim construction purposes.

(A36 at ¶ 1.)

Defendants in the Unrelated Cases, like Huawei, indicated a desire to file a motion to apply collateral estoppel. In the interest of justice and in furtherance of judicial economy, the District Court ordered the defendants in all of the underlying District Court cases that intended to make such a motion to jointly file an omnibus

memorandum of points and authorities and reply.  (A37 at ¶ 6.)  The defendants in each case thereafter filed separate collateral estoppel motions in each of their respective cases that incorporated a common omnibus memorandum of points and authorities filed in Case No. 13-cv-356-DMS-WVG (the "356 Case"), consistent with the District Court's order.  (*See, e.g.,* A41-42.)  Each of the separate defendants also joined in the reply filed in the 356 Case.

After a full briefing and a hearing, the District Court entered separate, albeit identical, orders in each of the individual cases granting the application of collateral estoppel.  (*See, e.g.,* A5, 32-33 at Dkt No. 64.)

Thereafter, e.Digital and several defendants in the Unrelated Cases negotiated and entered into separate stipulations for non-final judgments of non-infringement of the '774 patent and '108 patent.  However, e.Digital and the Huawei defendants separately negotiated and entered into a stipulation for final judgment from which this appeal followed.  (A1-4.)

Based on the foregoing and because the pending appeal and Unrelated Cases remain separate and unconsolidated under 35 U.S.C. § 299, e.Digital believes that the Unrelated Cases will not directly affect or be directly affected by this Court's decision in the pending appeal.

## II.    STATEMENT OF JURISDICTION

The District Court's jurisdiction in this patent infringement action was premised on 28 U.S.C. § 1338(a).  The District Court entered final judgment disposing of all parties' claims on October 7, 2013, and a Notice of Appeal was timely filed on October 10, 2013.  The jurisdiction of this Court is premised on 28 U.S.C. § 1295(a)(1).

Nonetheless, Appellant is aware that at least one defendant in the Unrelated Cases is taking the position that this Court may not have jurisdiction to hear the present appeal on the ground that District Court's final judgment from which this appeal is filed, is not a Rule 54(b) judgment with a finding of "no just reason for delay" to appeal.  Appellant disagrees and the standing of this defendant from one of the Unrelated Cases to raise the issue is questionable.

As noted, this case was not joined or otherwise consolidated with the Unrelated Cases under 35 U.S.C. § 299 and was terminated with entry of final judgment under Rule 54(a) of the Federal Rules of Civil Procedure.  Further, the Order from which this appeal arises, results from Huawei having filed its own, separate motion to apply collateral estoppel.  In granting Huawei's motion the District Court entered an order granting Huawei's motion, separate from the Unrelated Cases.  Accordingly, there are no issues pertaining to the present case that are pending before the District Court inasmuch as a final, appealable judgment

ix

under 28 U.S.C. § 1295(a)(1) has been entered.

## III.   STATEMENT OF ISSUES FOR REVIEW

1.   Whether the District Court erred in granting the Defendant/Appellee's motion to apply collateral estoppel with respect to certain terms contained in U.S. Patent No. 5,491,774 ("the '774 patent").

2.   Whether the District Court erred in granting the Defendant/Appellee's motion to apply collateral estoppel with respect to certain terms contained in U.S. Patent No. 5,839,108 ("the '108 patent").

## IV.   STATEMENT OF THE CASE

This appeal was taken by Plaintiff-Appellant e.Digital Corporation ("e.Digital") after the Southern District of California  (the "District Court" or "San Diego District Court") entered final judgment of non-infringement of the '774 patent in favor of Defendants-Appellees Futurewei Technologies, Inc. and Huawei Devices USA, Inc. (hereinafter, collectively, "Huawei").  (A1-4.)

The District Court found that e.Digital was collaterally estopped from asserting a construction of a phrase contained in the '774 patent that is different than the construction entered in *e.Digital Corp. v. Pentax of Am.*, U.S. District Court, D.Colo., Case No. 09-cv-2578-MSK-MJW (the "Colorado Case" or "Colorado Court"), which also involved the '774 patent.  (A14-15.)

The District Court further found that e.Digital was collaterally estopped from asserting a different construction of the same phrase which is contained in the '108 patent, despite the fact the '108 patent was not asserted in the Colorado Case, was not the subject of a Markman proceeding, and is not a parent of or a continuation of the '774 patent.  (*Id.*)

On the basis of the District Court's order applying the collateral estoppel doctrine, the parties stipulated that Huawei's products do not infringe the asserted claims of the '774 patent and '108 patent and the District Court entered judgment on October 7, 2013.  (A1-4.)  This appeal follows.

1

## V.    STATEMENT OF THE FACTS

### A.    Introduction

The patents that are asserted against Huawei generally relate to the recording and playing back of messages on a handheld device utilizing flash memory. Huawei makes and sells "smartphones" containing and/or capable of use with removable, interchangeable flash memory modules known as microSD cards. These smartphones are alleged, in the San Diego District Court action to infringe independent claim 33 and dependent claims 2, 10, 15 and 23 of the '774 patent and independent claim 2 of the '108 patent.

The accused smartphones, record audio to and playback audio from removable, interchangeable microSD cards and, in between such instances of recording and playback, enable and/or disable the supply of electrical power to the receiving socket for the microSD card, the microphone element, and speaker element in response to control signals provided by the device's microprocessor to conserve power, as taught by the asserted claims of the '774 patent.  In addition, the accused smartphones contain at least two microphones, at least one of which is configured to receive and process sound so as to cancel noise received at least one other microphone as disclosed by the asserted claim 2 of the '108 patent.

### B.    The Asserted Patents

#### 1.    The '774 Patent

2

The '774 patent was issued on February 13, 1996 following an application made in April 1994. At that time the typical manner of electronically recording audio was to store received electronic audio signals to a physically moving analog recording medium such as cassette tape or vinyl or digital media such as laser disks. (A559, Col. 1:17-38.)

While handheld recorders existed at the time of the invention of the '774 patent, those devices continued to rely on power-consuming, moving media such as cassette tape and compact disk. (Id., Col. 1:53-67.) While there had been some experimentation with fixed, non-moving media in handheld recorders via non-volatile, analog memory storage such as EEPROM, such devices were problematic in terms of their limited storage capabilities and inability remove and exchange media as one might with a cassette tape or CD. (Id., Col. 2:1-38.)

The '774 patent and its child patents, solved many of the problems of the prior art by teaching, among other things, a handheld digital recording device with a removable, interchangeable, compact, non-volatile flash memory that is capable of offering recording and playback lengths similar to cassette tape or CD (unlike, e.g., the prior art devices utilizing analog EEPROM with limited storage capability), without power-draining moving parts (such as required by cassette tape, CD or vinyl). (Id., Col. 2:41-59, Claims 33, 2, 10.) The '774 patent further discloses enhancing the operational control and power efficiency of a handheld

3

device by disclosing, among other things, the selective enabling and disabling of component parts, such as the microphone, speaker and removable flash receiving socket in between uses. (Id., Col. 2:59-62, Claims 33, 15, 23.)

### a. Assertion of The '774 Patent in the Colorado Case.

Independent claims 1 and 19 of the '774 patent were asserted in the Colorado Case. Claims 1 and 19 each contained the phrase "**a flash memory module which operates as sole memory of the received processed sound electrical signals**" (the "Disputed Term"). The Court in the Colorado Case was asked to and did construe the disputed term.

Concurrently, claims 1 and 19 of the '774 were also the subject of an *ex parte* reexamination before the United States Patent and Trademark Office ("PTO"). The Court in the Colorado Case, however, issued a Markman Order construing the Disputed Term before completion of the *ex parte* reexamination. After entry of the claim construction order in the Colorado Case, the PTO canceled independent claims 1 and 19 and allowed the issuance of new independent claims 33 and 34, which, on their face, are substantially different from the cancelled claims 1 and 19.

### b. Assertion of The '774 Patent in the San Diego Case

In the present case, e.Digital asserted independent claim 33 and dependent claims 2, 10, 15, and 23 against Huawei. Since claims 1 and 19, which were at

4

issue in the Colorado Case were cancelled, they therefore were not and could not be asserted in the present case.

## 2.     The '108 Patent

The '108 patent is a continuation-in-part of e.Digital's U.S. Patent No. 5,787,445 ("the '445 patent"). (A118.)  While the specifications of the '108 patent contain several references to the '774 patent as an example of prior art, neither the '108 patent nor the '445 patent are continuations of the '774 patent.  Accordingly, they do not share the same prosecution history.

### a.     The '108 Patent was not asserted in the Colorado Case

The '108 patent was not asserted in the Colorado case and was not subject to any previous claim construction proceedings or reexaminations.   As such there has never been a judicial claim construction of the terms of the '108 patent.

### b.     Assertion of The '108 Patent in the San Diego Case

Only claim 2 of the '108 patent was asserted against Huawei.  Claim 2 discloses a handheld recording device using two microphones, one of which is reserved for noise-cancellation. (A128.)  Claim 2, however, contains the Disputed Term that was construed in the Colorado Case, i.e.; "a flash memory module which operates as sole memory of the received processed sound electrical signals." (Id.)

## C.     The Colorado Claim Construction Proceedings

5

The Colorado case was filed on February 23, 2010 in the District of Colorado and assigned to Hon. Marcia S. Krieger.  e.Digital only asserted the '774 patent and U.S. Patent No. 5,742,737 ("the '737 patent") in the Colorado Case.   It did not assert the '108 patent.

The parties in the Colorado Case proposed competing constructions for a number of terms appearing in Claims 1 and 19 of the '774 patent.  In particular, the parties disagreed over the construction of the broader claim term "**a flash memory module which operates as sole memory of the received processed sound electrical signals and is capable of retaining recorded digital information for storage in nonvolatile form**."

The parties' disputed constructions are set forth in the chart below:

| e.Digital's Proposed Construction | Colorado Defendants' Proposed Construction |
|---|---|
| "a removable, interchangeable flash memory storage device that (1) is <u>the only removable memory storage device that receives for storage the processed sound electrical signals</u>, and (2) is capable of retaining for storage digital information without the need for ongoing power support." | (1) flash memory module: "a removable, interchangeable flash memory recording medium"<br><br>    and<br><br>(2) sole memory of the received processed sound electrical signals: "<u>the only memory of the received processed sound electrical signals, without another memory system such as RAM</u>" |

(*See* A280.) (Emphasis added.)

Judge Krieger conducted a *Markman* hearing on January 28, 2011 and in connection therewith accepted briefing and oral argument related to a number of claim terms including the Disputed Term identified above. (A140-A141.)

Following the hearing, Judge Krieger issued a claim construction order on June 28, 2011 (A139, *et seq.*) concluding that the parties' dispute turned on the interpretation of the phrase "**received processed sound...signals**" and whether that language "references <u>partially</u>-processed data (in which case, alternative memory structures such as RAM could not be used during data-handling operation), or whether it referred only to <u>fully</u>-processed data (in which case, RAM could be used by the device during processing)." (A147.) (Emphasis in original.)

Judge Krieger then divided the construction of the sole memory term into two parts. Looking to the original prosecution history (pre-reexamination) of the '774 patent, the Court ruled, "the phrase 'received processed sound electrical signals' must refer to, at most, the output of the differential amplifier and gain control circuits, after which the sound signals have been 'processed.'" (A149.) Using the existing prosecution history that did not contain the yet to be created reexamination history the Court found:

> "[t]he phrase 'received processed sound signals' refers to the electrical signals that have been generated by the microphone and passed through the amplifier and gain control circuits, but have yet to be converted by the CODEC."

(*Id.* at p. 16.)

7

Applying the "sole memory" language to this construction, Judge Krieger found:

> "The remainder of the disputed language requires that the device use only flash memory, not RAM or any other memory system, while engaging the CODEC, DSP (as applicable), and memory control functions, as well as storing the fully-manipulated data."

(*Id.*)

e.Digital argued that RAM, though not expressly identified in the claims or the prosecution history, was implicitly present in the invention.  Addressing e.Digital's argument the Court stated in part:

> The Plaintiff argues that this conclusion is misplaced for two major reasons. First, he [*sic*] contends that any person skilled in the art would implicitly understand, based on the computational tasks performed by the device, that RAM would be required: as Mr. Norris put it, "by the fact that there's DSP in there and other functionality, [like a] microprocessor, it's obvious to anyone with freshman knowledge of electronics, you've got RAM."  In other words, the Plaintiff's position is that RAM is an indispensable component of a device engaging in these types of microprocessor-based computations, and that specifically referencing the presence of RAM in the patent would be superfluous. However, the unrebutted evidence received from Mr. Mihran at the *Markman* hearing indicated that certain types of flash memory – including the type specifically identified in the '774 patent – could be directly addressed by the microprocessor in the same way that RAM could, such that one could replace that RAM with the appropriate flash memory. **Thus, a person skilled in the art and reading the '774 patent might initially be confused by the device's apparent abandonment of commonly-used RAM in support of microprocessor operations**, but that same reader would then review the characteristics of the flash memory recited in the patent and realize that that flash memory could be addressed by the microprocessor in the same manner as ordinary RAM. Thus, the mere fact that the types of data-handling operations disclosed in the '774

patent would lead one skilled in the art to assume the presence of RAM does not render the patent's clear disclaimer of RAM to be misleading, as the patent clearly discloses the presence of a functional RAM-alternative.

(A152-A153.) (Emphasis added.)

Following the Markman Order, e.Digital settled the case with the remaining Colorado Defendants and the Colorado Court granted joint motions to dismiss, but did not approve any settlements. The Colorado Court did not enter any final judgment or make any determination as to validity, infringement or claim construction of any other terms of the patents. The Colorado Case was closed on or about October 26, 2011.

### D.   Reexamination of the '774 Patent

A request for reexamination of certain claims of the '774 patent, including independent claims 1 and 19 (which were in asserted in the Colorado Case), was filed with the USPTO on October 27, 2010. The PTO issued its first Office Action on regarding the reexamination on September 20, 2011, nearly 3 months after entry of the Colorado Claim Construction Order. (*See* A284.)

Subsequent communications between the PTO and e.Digital's counsel ensued and ultimately, the two independent claims, 1 and 19 of the '774 patent were cancelled and new claims 33 and 34 issued. (*Id.*)

In the course of the reexamination, e.Digital created new prosecution history pertaining to the use of RAM (an issue that Judge Krieger addressed in her Markman Order).  e.Digital submitted several figures to the PTO representing the invention of claims 1 and 19 (later, claims 33 and 34), demonstrating that RAM is a component of the control circuitry disclosed in the independent claims of the



Exhibit F

'774 patent.  (A296, A300-A312).  Recall that the use of RAM was an issue for the Colorado Court.   One of those figures is shown above.  (A308.)

Actions ensued before the PTO and on August 14, 2012 (more than a year after issuance of Judge Krieger's *Markman* Order and almost a year after the Colorado case was closed), the United States Patent and Trademark Office issued a Reexamination Certificate for the '774 patent, canceling the claims that Judge

Krieger construed and adding new independent claims 33 and 34 together with several new dependent claims.  (*See* A289-A290.)

In its statement of reasons for patentability and/or confirmation, the USPTO stated:

> Regarding independent claims 33 and 34, each requires, *inter alia,* the uniquely distinct features:  **control circuitry includes a microprocessor** (21) coupled to switch circuitry, which includes multiple transistors (MOSFETs 64, 65, and 66, and QP2B) configured to enable supply of electrical power to the receiving socket (30) and to enable or disable at least one of the microphone element (20) and the speaker (36) during record and playback functional operations and in response to control signals provided by the microprocessor, see Figures 1 and 4-6…"

(Emphasis added.) (A318.)

In addition, new claims 33 and 34 contained additional language and limitations that were not present in the now canceled claims 1 and 19.  The literal differences between canceled claim 1 and new claim 33 are shown in the chart below:

| Claim 1 (Before Reexamination/Before Cancellation) (Defendants' Exhibit 1, Claim 1) | New Claim 33 (Added After Reexamination) (Exhibit 3 to Hedrick Decl., Claim 33) |
|---|---|
| A record/playback device for use with a……… | A record/playback device for use with a …….. |
| control circuitry coupled to the microphone element and including signal input circuitry, amplification circuitry, analog-to- | control circuitry coupled to the microphone element and including signal input circuitry, amplification circuitry, analog-to-digital conversion circuitry, memory control |

11

| | |
|---|---|
| digital conversion circuitry, memory control circuitry, signal output circuitry and control logic circuitry for performing record and playback functional operations with respect to the electrical signals and other regulated components of the record/playback device; | circuitry, signal output circuitry and control logic circuitry, **which includes a microprocessor coupled to switch circuitry**, for performing record and playback functional operations with respect to the electrical signals and other regulated components of the record/ playback device; |
| ………. | ………. |
| [No language] | **wherein the power source is coupled to the switch circuitry; and** |
| [No language] | **wherein the switch circuitry includes multiple transistors**<br><br>**configured, to enable supply of electrical power to the receiving socket and to enable at least one of the microphone element and the speaker during record and playback functional operations and in response to control signals provided by the microprocessor, and to optionally disable supply of electrical power to the receiving socket and to optionally enable supply of electrical power to at least one of the microphone element and the speaker between occurrences of record and playback functional operations and in response to control signals provided by the microprocessor.** |

### E.    The Proceedings Before The San Diego District Court

Appellant-Plaintiff e.Digital filed its complaint against Huawei on April 2, 2013.  (A519-602.)  On May 29, 2013, the District Court held a Case Management

Conference in the Huawei Action and in the Unrelated Cases. (A31 at Dkt No. 52.) At the Conference, the Defendants indicated a desire to file a motion to apply collateral estoppel in connection with the proceedings in Colorado. (A37 at ¶ 6.) The defendants argued that e.Digital should not be allowed to reargue the Disputed Term adjudicated in the Colorado Case under the doctrine of collateral estoppel.

To resolve the issue early on in the case, the District Court ordered the defendants in all of the underlying District Court cases that desired to make such a motion to jointly file an omnibus memorandum of points and authorities and reply. (*Id.*) Consistent with the District Court's order, Huawei filed a collateral estoppel motion that incorporated the omnibus memorandum of points and authorities filed in Case No. 13-cv-356-DMS-WVG (the "356 Case"). (*See, e.g.,* A41-42.) Huawei also joined in the reply filed in the 356 Case. (A336-338.)

After a full briefing and a hearing, the District Court entered an order granting the application of collateral estoppel as to the Disputed Term. (*See, e.g.,* A5, 32-33 at Dkt No. 64.) In light of the Court's order, e.Digital and the Huawei defendants entered into a stipulation for final judgment from which this appeal followed. (A1-4.)

## VI.   SUMMARY OF THE ARGUMENT

In its "Motion to Apply Collateral Estoppel Regarding the Claim Construction Ruling in Prior e.Digital Case" ("Motion"), Huawei argued that

Plaintiff, e.Digital Corporation ("Plaintiff" or "e.Digital"), is collaterally estopped from re-litigating certain claim constructions entered by the Hon. Judge Marcia Krieger in *e.Digital Corp. v. Pentax of America, Inc.*, Case No. 09-cv-2578-MSK-MJW (D.Col.) (alternately referred to hereafter as the "Colorado Case" or *Pentax*) with respect to U.S. Patent No. 5,491,774 ("the '774 patent").

Further, Huawei sought to extend and apply the collateral estoppel doctrine to U.S. Patent No. 5,839,108 ("the '108 patent") as to similar terminology contained in the '108 patent notwithstanding the fact that the '108 patent was not asserted in the Colorado Case, is not a continuation of the '774 patent, and was not construed in the Colorado Case by Judge Krieger.

Application of the collateral estoppel doctrine is not appropriate for a number of reasons not the least of which is that there exists additional reexamination history and new claim language that was not considered by the Court in the Colorado Case.

Moreover, collateral estoppel is not applicable to the '108 patent because it was never litigated in the Colorado case, does not share common ancestry with the '774 patent, and includes express intrinsic evidence that precludes application of the Colorado Court's claim construction rulings as to the unrelated '774 patent. Accordingly, e.Digital respectfully requests that this Court reverse the findings of the District Court with respect to the issue of collateral estoppel.

14

## VII.   STANDARD OF REVIEW

A District Court's application of collateral estoppel is reviewed *de novo*. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1376 (Fed. Cir. 1999).   Because the application of collateral estoppel is not a matter within the exclusive jurisdiction of the Federal Circuit, the court must apply the law of the circuit in which the district court sits, in this case, the Ninth Circuit. *Vardon Golf Co., Inc. v. Karsten Manufacturing Corp.*, 294 F.3d 1330, 1333 (Fed. Cir. 2002).  However, "for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable.  *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).  In particular, Federal Circuit law applies when determining whether a reexamination materially changed the claims at issue in subsequent litigation.  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340-1341 (Fed. Cir. 2012).

Under Ninth Circuit law, collateral estoppel applies only if *all* of the following conditions are met:  "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."  *Kendall v. Visa USA, Inc.*,

518 F.3d 1042, 1050 (9th Cir. 2008) *quoting*, *United States Internal Revenue Serv. v. Palmer (In re Palmer),* 207 F.3d 566, 568 (9th Cir. 2000).

The party asserting collateral estoppel has the burden to show that the pending issue is **<u>identical</u>** to an issue actually litigated and decided in the previous action. *Pool Water Prods. v. Olin Corp*., 258 F.3d 1024, 1031 (9th Cir. 2001); *see also Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). If there is any doubt that the issues are identical, collateral estoppel will not be applied. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir. 1985); *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) ("A party asserting the defense of collateral estoppel has the burden of showing that the issue for which an estoppel is claimed was actually adjudicated in a prior proceeding. If there is doubt on this score, collateral estoppel will not be applied").

## VIII. ARGUMENT

### A.     The Issues Presented With Respect To The '774 Patent Are Not Identical To Those Litigated In Colorado

For collateral estoppel to apply, the issues presented in the two courts must be identical. *Pool Water Products v. Olin Corporation*, 258 F.3d 1024, 1031 (9th Cir. 2001). Here, the District Court erroneously concluded that the claim construction issue before it was identical to the one presented in the Colorado Case. Based on this flawed conclusion, the District Court held that e.Digital is collaterally estopped from asserting a different construction of the term "a flash

16

memory module which is the sole memory of the received processed sound electrical signals." While it is not disputed that these exact words are in both former claim 1 (which was subject to construction in the Colorado Case) and new claim 33 of the '774 patent (which is asserted in the District Court case), the District Court must interpret new claim 33 in light of a wholly different claim and in light of new prosecution history. It is therefore impossible to conclude that the District Court in the Colorado Case and the District Court below were presented with the identical issue.

It is undisputed that substantial claim amendments and additional reexamination history concerning the '774 patent were developed well after the Colorado Case concluded. As a result of this timing, the claim amendments and additional re-examination history were not and could not have been considered by the Colorado Court. The District Court below cannot simply ignore this additional re-examination history and is compelled to construe disputed claims terms within the context of the newly created and substantially more detailed claim 33.

These amendments and the further reexamination history resulted in the presentation of new claims and new intrinsic evidence highly relevant to the construction of the terms of the '774 patent. *See Golden Bridge Technology, Inc. v. Apple Inc.*, 937 F.Supp.2d 490, 496-497 (D.Del. 2013) (denying application of collateral estoppel because "the court cannot simply ignore new prosecution

history that was not of record in the [prior] Texas litigation"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Civ. No. 08-309, 2009 WL 4928029, at *16-17 & n. 1 (D.Del. 2009) *citing*, *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 477 (3d Cir. 1977) (finding that collateral estoppel does not apply where subsequent "reexamination history needs to be considered in connection with construing the claims").[1]

Sitting alone, these facts preclude application of the collateral estoppel doctrine.  While the disputed language itself may not have changed from claim 1 to claim 33, the basis and requirements for construing it has.  The District Court cannot therefore turn a blind eye to its obligation to construe this language in light of this changed context since a full and fair hearing on the construction of the terms of claims 33 and 34 require consideration of the entire claim along with all of the attendant prosecution history.

It is clear that the Colorado Court could not, and therefore did not consider the language of claims 33 and 34 of the '774 patent that did not exist in claims 1 and 19.  Equally clear is the fact that in the Colorado Case, the Court could not, and did not consider the re-examination prosecution history, which precipitated the

---

[1] While not Ninth Circuit case law, this Third Circuit line of cases is governed by and decided by the same identity of issues prerequisite found in the Ninth Circuit precedent discussed above.  Furthermore, issues of patent law, even if intertwined with collateral estoppel issues remain the province of the Federal Circuit.  Thus, the fact that the cited cases represent the law of the Third Circuit should not render them less relevant than Ninth Circuit law.

issuance of new claims 33 and 34.   For these reasons, the issues related to construing the disputed terms in the Colorado Case are simply not identical to those presented to the District Court below.   As such, collateral estoppel will not lie inasmuch as the requirement of law that the identical issue has been fully and fairly litigated in the earlier case cannot be found.

### B.   The Colorado Court Construed The Disputed Terms In Light Of a Different Prosecution History

In reaching its final construction of the disputed claim terms, the Colorado Court relied primarily on the prosecution history of the '774 patent - a prosecution history that was devoid of subsequently-created reexamination history.   Given the importance of prosecution history to claim construction and the significant weight given to the '774 patent's prosecution history by Judge Krieger, the existence of this new reexamination history, which, as discussed below, bears on the issues before the Court, must preclude application of the collateral estoppel doctrine.

In construing the claims of the '774 patent, the District Court must consider not only the amended and different claims than those presented in the Colorado Case, it must also consider them in light of a different and fuller prosecution history. Because the Colorado District Court could not have considered this reexamination history, one cannot say that its construction of the terms of the '774 patent are squarely aligned with a proper construction of the terms in the re-examined and amended patent.

The Federal Circuit notes that "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the USPTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983). Because an examiner can be considered one of ordinary skill in the art, his or her construction of the asserted claims carries significant weight. *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, 2011 WL 66166, *6; 412 Fed. Appx. 270, 276 (Fed. Cir. 2011).

Accordingly, to the extent claims survive the reexamination process, the reexamination history would "facilitate trial by providing the Court with expert opinion of the USPTO and clarifying the scope of the claims." *Robert Bosch Healthcare Systems, Inc. v. ExpressMD Solutions, LLC*, 2013 WL 752474, *3, (N.D. Cal. 2013) (*quoting Target Therapeutics, Inc. v. SciMed Life Systems, Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal. 1995); *see also In re Cygnus Telecommunications Technology, LLC Patent Litigation*, 385 F.Supp.2d 1022, 1024 (N.D.Cal. 2005) ("For those claims that survive the reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration"); *ProtectConnect, Inc. v. Leviton Mfg. Co., Inc.* 2011 WL 1559762, *2 (S.D.Cal. 2011).

In addition to the examiner's analysis, a Court can draw upon a patentee's statements during reexamination to assist it in claim construction. *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed.Cir. 2011); *see also Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266-67 (Fed. Cir. 2012).

The San Diego District Court inappropriately interpreted reexamination history (something that the Colorado Court could not do) in connection with granting Huawei's collateral estoppel motion. The risk is that the San Diego District Court could get it wrong when interpreting prosecution history outside the milieu of a Markman proceeding. In going down that path the San Diego District Court found:

> In contrast to the sole memory limitation addressed in *Pentax*, **the reexamination** before the USPTO addressed the limitation, 'power source coupled to the control circuitry for supplying electrical power to the device.' **The proceedings did not involve any discussion of memory, as is evidence form the reexamination documents submitted by the parties**… **The presence of RAM, or the requirement of flash memory as the sole memory, was not the subject of the reexamination, was not discussed with the examiner**, and was not addressed by the reexamination certificate. (emphasis added)

(A8:15-18, A9:2-4.)

Notwithstanding that the interpretation of application of the reexamination history was beyond the scope of the collateral estoppel motion, the District Court's interpretation of the reexamination history was partially incorrect. Indeed, there is nothing in the record to suggest that the District Court considered the entire

21

reexamination prosecution history, including the figures presented during reexamination that show RAM coupled to the microprocessor as part of the control circuitry. Had the parties been arguing a Markman, these facts would have been presented in ways that illustrate the use of RAM. Simply RAM memory *was* discussed with the examiner and e.Digital is now effectively precluded from putting on evidence thereof at a Markman. (A296 ("Mr. Gurries explained how the circuits of Figs. 4, 5, 6A and 6B are arranged and operated…"), A303-A312 (Figs. 4, 5, 6A and 6B).)

Nevertheless, whether the Disputed Term construed by the Colorado Court was or was not the focus of the reexamination is irrelevant since claim 1, from which the Colorado Court issued its Markman Order, was cancelled and was not at issue in the San Diego District Court.

A Court cannot ignore intrinsic evidence that relates to a claim as a whole, which here the reexamination history does, simply because it does not specifically refer to a particular set of claim terms within the claim. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) (holding that a term's ordinary meaning must be considered in the context of all intrinsic evidence, namely the claims, the specification, and the prosecution history); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[f]irst we look to the

words of the claims themselves, ***both asserted and nonasserted***, to define the scope of the patented invention").

The point here is that while the ***existence*** of additional prosecution history is certainly relevant to a determination of whether the collateral estoppel doctrine applies, the San Diego District Court's ***interpretation*** of the reexamination history (which was not before the Colorado Court) was beyond the scope of Huawei's collateral estoppel motion.

Properly, the impact of this newly created intrinsic evidence on the construction of the Disputed Term should have been deferred to the District Court's claim construction hearing where all parties would have a full and fair ability to argue (e.g., through additional extrinsic evidence, including witness testimony) the proper application of the re-examination history.  By granting Huawei's collateral estoppel motion in this way the Court thus denied Appellant a full and fair opportunity to put on evidence as to the full impact of the reexamination history.[2]

Accordingly, the reexamination history discussed above is entirely relevant and applicable to claims asserted in the present case.

---

[2] While e.Digital did present some cursory attorney argument regarding the impact of the reexamination history on the proposed construction, it did not anticipate that the Court would convert Huawei's collateral estoppel motion into a full-blown claim construction proceeding.  e.Digital therefore was deprived of an opportunity to present evidence of how a person of ordinary skill in the art would read and understand the new reexamination history.

### C. The Reexamination History Is Material To The Construction Of The Term Construed in Colorado.

The '774 patent reexamination history clearly denotes the presence of RAM in the control circuitry of the claimed invention, which is used to support microprocessor operations. In the course of the '774 patent reexamination proceedings, a personal interview was held on December 2, 2011 with USPTO Central Reexamination Unit members Examiner Tran, Examiner Nalven and Senior Examiner Ryman (*See* A292-298.).   Two weeks later e.Digital filed a Response in Ex Parte Reexamination of U.S. Patent No. 5,491,774 on December 20, 2011.   (*See* A300-A312.)   Attached to the response are figures that were discussed at length with the USPTO.   (*See* A296 (noting the discussion of the referenced figures, A303-A312.)   These figures specifically refer to the presence of RAM in the invention of the '774 patent to support microprocessor operations. (*See id.*)

Exhibit F (A307-A308) of the above-referenced Response is depicted at right by way of example. Figures 5 and 6A show



24

the presence of control circuitry containing a microprocessor ***and RAM*** (Fig. 5) coupled to the receiving socket, which would contain the removable flash memory module contained (Fig. 6A). Additional exhibits filed with the PTO likewise show the presence of RAM in the device coupled with various other components of the claimed device, including the newly claimed microprocessor, the speaker and the microphone. (*See* A303-A306, A309-A312.)

Having been shown the above-referenced figures in person and as part of e.Digital's office action response, and with knowledge of Judge Krieger's claim construction order, the PTO allowed the amendment of the independent claims of the '774 patent to incorporate, among other things, the addition of the microprocessor of Fig. 5 shown above. (*See* A288-A290, *passim*, and Col. 3, line 3.)

A person of ordinary skill in the art at the time of the invention, having the benefit of reviewing the amended claims and the prosecution history containing the above-referenced figures, would therefore clearly understand that the invention of amended claims 33 and 34 requires the presence of RAM to support, among other things, microprocessor applications; a conclusion that contradicts that reached by Judge Krieger. Judge Krieger did not have the benefit of these additional references from the reexamination history to consider in connection with her claim

construction order, which standing alone, renders the claim construction issues presented to her fundamentally different than those presented here.

In the District Court below, Huawei argued that the amended claims, the prosecution file and discussion with the examiner are irrelevant since the originally disputed claim terms are still present in new claims 33 and 34.  (A41-A42, A60:7-11.)  Huawei is wrong.

Judge Krieger held that "[t]he phrase received processed sound electrical signals" refers to the electrical signals that are generated by the microphone and passed through the amplifier and gain control circuits, but have yet to be converted by the CODEC."  (A154.)  She then concludes, "[t]he remainder of the disputed language requires that the device use only flash memory, not RAM or any other memory system, while engaging the CODEC, DSP (as applicable), and the memory control functions, as well as storing the fully-manipulated data."  (*Id.*)

However, the reexamination history, which was not available to Judge Krieger, clearly shows that the microprocessor of the new claim 33 utilizes RAM as part of the control circuitry of claim 1.  (*See* A300-A312.)  Consistent therewith, the specifications of the '774 patent disclose that the microprocessor of the claimed invention of the '774 patent "drive[s] *__all__* system components."  (Emphasis added.)  (A82 at Col. 5, ll. 58-59.) Therefore, at least one possible interpretation of the reexamination history shown above is that the microprocessor utilizes RAM while

engaging the CODEC, DSP, memory control functions, and storing data.  (*See also id.* at Col. 5, ll. 33-39 (disclosing the DSP and CODEC are coupled to control circuitry 21, which also contains the microprocessor), Col. 5, l. 58 – Col. 6, l. 15 (CODEC and DSP are coupled to the microprocessor), Figs. 1-2 (control circuitry 21 includes analog-to-digital conversion (CODEC), memory circuitry, control logic, signal processing circuitry, playback circuitry and microprocessor.)  Thus, the explicit disclosure of RAM in reexamination is entirely material.  The Colorado Court did not have this reexamination history to consider, so the issues are not identical and collateral estoppel cannot apply.

### D. Collateral Estoppel Does Not Apply Because There Is Significant Doubt That The Colorado Court Determined Identical Issues.

The District Court found that, because the reexamination did not deal with the "sole memory…" issue, it is not sufficient to avoid the collateral estoppel effect of the Colorado Case.

The case law is clear that there must be **no doubt** that the **pending issue before the District Court** is identical to an issue actually litigated and decided in the previous action.  *Pool Water Prods. v. Olin Corp.*, *supra*, 258 F.3d at 1031; *Davis & Cox v. Summa Corp., supra*, 751 F.2d at 1518.

Here, there is more than substantial doubt that the Colorado Court and the San Diego District Court were presented with the identical issue.  The reexamination history, the newly issued claim language when read together with

the specifications renders a finding that the interpretation of the Disputed Term would be identical in both Courts.

Indeed, the intrinsic evidence not available to the Colorado Court clearly shows that RAM is a component of the control circuitry and is coupled to the microprocessor, which "drive[s] ***all*** system components."  (A82 at Col. 5, ll. 58-59.) (Emphasis added.)   This fact standing alone commands a finding that the issues presented in the Colorado and San Diego Courts are not identical.

Even if the reexamination history of the '774 patent did not specifically deal with the issue of "sole memory," the fact remains that the Colorado Court did not determine issues identical to those presented to the District Court, its easy to see that the new claim 33, makes it clear that "Control circuitry" is a required component of claim 33.  The reexamination history reinforces this by revealing that both the microprocessor and RAM are components of the control circuitry.

The specifications in the patent when read in context with the new claim 33 and the reexamination history, further make it clear that the microprocessor, which the reexamination history confirms is coupled to RAM, drives all components of the invention, including those components that the Colorado Court found must operate without RAM.

28

Since the additional evidence was not available to the Colorado Court, more than a substantial doubt exists as to whether the issues in the present case are identical to the issues presented in the Colorado Case.

### E.   New Claims 33 And 34 Of The '774 Patent Narrower and Not Identical To Claims 1 And 19 Litigated In The Colorado Case

After its reexamination of the '774 patent, the PTO issued a Notice of Intent to Issue *Ex Parte* Reexamination Certificate, which canceled independent claims 1 and 19 allowed new independent claims 33 and 34, and added additional dependent claims. Since the claim language has been modified, it is difficult to say that the Colorado and San Diego Courts would be construing identical claims. In its statement of reasons for patentability and/or confirmation, the USPTO stated:

> Regarding independent claims 33 and 34, each requires, *inter alia,* the uniquely distinct features: control circuitry **includes a microprocessor** (21) coupled to switch circuitry, which includes multiple transistors (MOSFETs 64, 65, and 66, and QP2B) configured to enable supply of electrical power to the receiving socket (30) and to enable or disable at least one of the microphone element (20) and the speaker (36) during record and playback functional operations and in response to control signals provided by the microprocessor, see Figures 1 and 4-6…"

(A318.)

Huawei's argues that e.Digital's position would unlawfully expand the scope of the claim after reexamination. That is difficult to understand since the new language of claims 33 and 34 contain new limitations that were not set forth in former claim 1. With the addition of new limitations comes a narrowing of the

29

scope of the claims not an expansion. As such the changes to the '774 patent have narrowed the scope of the asserted claims in ways that are substantial and substantive. *See*, *e.g.*, *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1348 (Fed.Cir.1991) (addition of new claim term to avoid prior art deemed substantive); *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.,* 129 F.3d 1247, 1250-51 (Fed. Cir. 1997) ("[T]he claims were narrowed and limited in view of that [prior art] patent. The district court correctly viewed this as a substantive change in claim scope."); *I-Flow Corp. v. Apex Medical Tech., Inc.,* 2010 WL 144405, *3-*5 (S.D. Cal. 2010) (Hon. Dana M. Sabraw) (holding that amending claims to state that "a housing is loosely positioned around said sleeve means, and that it defines a chamber between the sleeve means and the housing," are substantive changes).

With the addition of the words "microprocessor coupled to switch circuitry" and the additional narrowing amendments highlighted above, a wholly different invention was created. Because, the new claims reflect the addition of a microprocessor with supporting RAM, which is coupled to the DSP, CODEC, memory circuitry, and control logic, and which "drive[s] all system components," the new claims must necessarily affect the construction of the term "sole memory of the received processed sound electrical signals."

These amendments, along with the clarifying reexamination history, were not before Judge Krieger and, as such, present this Court with issues not previously

30

litigated.  Huawei therefore did not meet its burden to show that the issues presented here and in Colorado are identical or were otherwise fully and fairly litigated.

### F.    The District Court Erred In Dismissing Out of Hand The New Claim Language.

The District Court found that the addition of the microprocessor did not add anything to the claims such as to avoid collateral estoppel since a microprocessor is disclosed in dependent claims 15 and 16, which remained unchanged after reexamination.  However, the addition of the microprocessor limitation to the body of the independent claims was essential to the PTO allowing the amended claim 33.  (A318.)  Furthermore, the reexamination history clearly illustrates that the microprocessor, which was not previously part of any limitation of the independent claims of the '774 patent, is coupled to RAM.

The patent specifications further make clear that this microprocessor (which is coupled to RAM) drives the components the Colorado Court previously found to be independent of RAM.  As a result, the District Court's determination that the addition of a microprocessor limitation to the independent claims of the '774 patent added nothing to the claims is incorrect.  As such, these facts cannot possibly satisfy the identity of issues requirement of collateral estoppel and the District Court's application of the collateral estoppel doctrine must be reversed.

### G.    The Additional Prosecution History And Claim Language Do Not

Broaden The Scope Of The Patent.

Any notion that the amended claims or e.Digital's proposed interpretation of the amended claims somehow broaden the scope of the patent as suggested by the District Court is incorrect (*See* A9:15-18) and e.Digital has never contended that it does.  Indeed, e.Digital concedes that claim 33 is substantially narrower than the original claim 1 in light of the substantial number of new limitations.  (*See* A263:26-28.)  e.Digital contends that the reexamination history clarifies what the patentees meant by the "sole memory…" phrase, particularly in the context of the new claim 33, which is substantially different than the canceled claim 1. However, this contention does not negate the fact that the substantial amount of new limitations narrows the scope of claim 33 as a whole as compared to the canceled claim 1 and render it a completely new claim.  Accordingly, contrary to the finding of the District Court (A9:24-25), the "sole memory…" phrase does not exist in the same context as it did with respect to canceled claim 1.

IX.   **COLLATERAL ESTOPPEL CANNOT BE APPLIED TO THE '108 PATENT BECAUSE IT WAS NOT ASSERTED IN COLORADO AND THE INTRINSIC EVIDENCE SUBSTANTIALLY DIFFERS FROM THE '774 PATENT**

Generally, collateral estoppel cannot be applied to preclude a subsequent patent infringement action based upon patents not at issue in the prior lawsuit.  *See, e.g.,* 35 U.S.C.A. § 121; 37 C.F.R. § 1.141; *Comair Rotron, Inc. v. Nippon Densan Corp.,* 49 F.3d 1535, 1539 (Fed. Cir. 1995) (holding that separate patents

describe separate and distinct inventions, and it cannot be presumed that related patents rise and fall together); *MSM Investments Co. v. Carolwood Corp.*, 70 F. Supp. 2d 1044, 1051–53 (N.D. Cal. 1999), aff'd, 259 F.3d 1335, 59 U.S.P.Q.2d (BNA) 1856 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Intern., Inc.,* 174 F.3d 1308, 1322, 50 U.S.P.Q.2d (BNA) 1161, 1169 (Fed. Cir. 1999) (patentee could not use prior claim construction of related patent determined by Federal Circuit in a non-precedential opinion against an accused infringer who was not a party to that proceeding to deny the accused infringer an opportunity to seek a narrower construction because the claims were different and had different meanings); *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd*., 2010 Markman 583960, 2010 WL 583960, *7 (N.D. Cal. 2010) (denying accused infringer's motion for a summary judgment of invalidity based on issue preclusion allegedly applying from a prior suit that held claims of a different patent invalid, the court finding that the identical issue was not presented in the prior case since the asserted claims in the suit had different limitations than the claims found invalid in the prior suit); *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1244, 70 U.S.P.Q.2d (BNA) 1257, 1264 (Fed. Cir. 2004) (reversing summary judgment that asserted claims of patent were not infringed due to collateral estoppel effect of a prior judgment involving a different, but related, patent because the claims,

specifications and prosecution history, of the asserted patents were different from the patent litigated in the prior suit, and therefore the issues were not identical).

The rationale beyond these precedents is based on the fact that separate patents are presumed, by law, to cover independent and distinct inventions. *Id.* The '108 patent, as Huawei conceded below, was not litigated in the Colorado case. (A61:11.) As a result, the first prerequisite for application of collateral estoppel therefore cannot be met.

In evaluating the application of collateral estoppel, courts may refer to the Restatement (Second) of Judgments. *Foster v. Hallco Manuf. Co., Inc.*, 947 F.2d 469, 480 (Fed.Cir.1991); *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir.1995). The Restatement identifies four factors to be considered in determining whether an issue in a successive proceeding is identical to an issue previously litigated: (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first; (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding; **(3) could the pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second; and (4) how closely related are the claims involved in the two proceedings.**

*Kamilche*, 53 F.3d at 1062; *see Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F.Supp.2d 1119, 1124–25 (C.D.Cal. 2005). (emphasis added).

In the District Court, Huawei cited to the Restatement, but failed to provide any evidence that any pretrial preparation or discovery in the Colorado case would have been reasonably expected to embrace litigation of the '108 patent. While the '108 patent refers to the '774 patent as an example of the prior art, unlike the patents at issue in *Tech. Licensing Corp. v. Thomson Inc. 2010 WL 843560* at *1 (E.D. Cal. 2013), they are distinct inventions and the '108 patent is not a child (i.e., not a continuation) of the '774 patent. Moreover, the prosecution history of the '108 patent does not contain the language relied upon by Judge Krieger to support her construction the "sole memory…" language of the '774 patent. In fact, the specifications of the '108 patent specifically disclose the presence of RAM, which is coupled to at least the DSP and the memory port for coupling the device to removable flash memory, in a preferred embodiment.[3]  (*See* A121-A122; A124 at Col. 4, ll. 24-33; A125 at Col. 6, ll. 62-67; A126 at Col. 8, ll. 46-51.)

---

[3] Interestingly, Huawei argued in the Court below that the "**sole distinction** between the inventions purportedly disclosed in the '774 patent and the '108 patent is that the invention in the '108 patent includes a second microphone that 'enables noise dampened recording of voice data and CD quality stereo recording of music data." (A41-A42; A55:12-15.) (Emphasis added.)  Yet, the specifications of the '108 patent clearly disclose the presence of RAM.  At the same time, Huawei argues that the invention of the '774 patent does not include RAM.  These positions cannot be reconciled.

Furthermore, in the Colorado Case, the Court placed special emphasis on the fact that, in the prosecution of the '774 patent, the patentee distinguished its invention from prior by asserting that the invention of the '774 patent utilized the removable flash memory module as "main memory," which the Colorado Court equated with RAM. (A151-A154.) No such finding can possibly be made with respect to the '108 patent. The specifications do refer to the removable flash memory as "the main system memory." (A126 at Col. 8, ll. 34-36.)

However, one cannot possibly read the '108 patent and conclude that the "received processed sound electrical signals" of claim 2 of the patent are processed without the aid of RAM since Figures 3 and 4 (below) clearly show that the DSP engages with SRAM as the sound signals travel from the microphone, through the CODEC and DSP and, ultimately, to the removable flash memory module as shown below:



*Fig. 3*

(*See* A121-A122.)

It is therefore axiomatic that the issues surrounding the construction of terms in the '108 patent are not identical to those in the '774 since this intrinsic evidence, which is peculiar to the '108 patent and is not contained within the '774 patent or its prosecution history.   (*See*, *generally*, A72-A116.)   In the final analysis, the issues concerning construction of the Disputed Term in the two patents are not identical and the Court's application of collateral estoppel was improper.

Finally, assuming *arguendo* that the '108 patent may somehow be subject to claim constructions of similar terms found in the '774 (which e.Digital disputes), the amended claims of the '774 patent and the new reexamination history would similarly preclude application of the collateral estoppel doctrine as set forth above.

37

Notwithstanding the differences in the intrinsic evidence of the '774 patent and the '108 patent and the fact that the '108 patent was not involved in the Colorado case, the District Court below nonetheless applied collateral estoppel as to the Colorado Court's construction of "a flash memory module which operates as the sole memory of the received processed sound electrical signals."  While the District Court conceded that the '108 patent "does not originate in the same patent application as the '774 patent," it nevertheless applied the collateral estoppel doctrine on the mere basis that "the patents are closely related."  (A10:10-26.)

The District Court cites to no legal authority in support of its findings on this issue.  Indeed, the only cases the District Court relies on cut against the District Court's findings.  (*See* Order at 6:5-10, *citing Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) (holding "separate patents describe 'separate and distinct [inventions],' … and it can not be presumed that related patents rise and fall together"); *see also Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1244, 70 U.S.P.Q.2d (BNA) 1257, 1264 (Fed. Cir. 2004) (reversing summary judgment that asserted claims of patent were not infringed due to collateral estoppel effect of a prior judgment involving a different, but related, patent because the claims, specifications and prosecution history, of the asserted patents were different from the patent litigated in the prior suit, and therefore the issues were not identical).

38

The District Court relied heavily on the fact that the specifications of the '108 patent refer to and incorporate at various points "the materials disclosed in U.S. Pat. No. 5,491,774." (A10:12-26.)   However, the specifications consistently refer to the '774 patent only as an example of the prior art and as "an example of the benefits of flash memory in a portable recorder." (A123 at Col. 1, ll. 21-27; A124 at Col. 4, lls. 18-23, 45-47.)  This should not amount to a wholesale adoption of the '774 patent and its prosecution history.  Certainly there is no legal support therefore.

While the specifications indicate that the invention of the '108 patent is intended as an improvement over the parent application and the invention of the '774 patent, this does not somehow transform the patent into a child of the '774 patent – most inventions are merely improvements over the prior art.  (A123 at Col. 2, lls. 42-45.)  Indeed, the specifications of the '108 patent consistently refer to the differences in the "voice recording … embodiments" of the '108 patent over the prior art '772 patent.  (A124 at Col. 4, lls. 47-51 ("It is useful to include a portion of the description [of the '774 patent] so that the *differences* between the presently preferred embodiments and the prior art are more evident when examining FIGS. 3 and 4 of the present invention"); A125 at Col. 6, lls. 53-58 ("Having described some specific aspects of some block diagrams of the prior art, it is now meaningful to examine the improvements provided by the present

39

invention.   When looking at FIGS. 3 and 4, *one of the most important modifications is the inclusion of a specific voice recording and playback embodiment*.").   While the remainder of the discussion of the '108 patent does not discuss RAM, it is clear from the Figures, that RAM is a component of at least one preferred embodiment of the noise cancellation features of claim 2 asserted in this case.  (A124 at Col. 4, lls. 24-33; A121-A122.)

The District Court wrongly discounts Figures 3 and 4, which are contained in the specifications of the '108 patent, and clearly show the presence of RAM.  (A11:9-10.)  Such a wholesale dismissal of the Figures, which constitute a material part of the specifications, is unsupportable, particularly where the specifications make clear that the figures are block diagrams "of the components in a presently preferred embodiment of the present invention."  (A 124 at Col. 4, ll. 24-34.)

The District Court goes on to misconstrue the specification's critique of the prior art Ban reference by erroneously finding that specification "touts the benefits of using flash drive over RAM."  (A11:11-12.)  dThis is not what the specification says, however.   Instead, the patentees are criticizing Ban's disclosure of manipulating data ***already stored in flash memory***, "by first reading the data out to a large random access memory (RAM), manipulating the data in RAM, erasing the flash memory where the data was originally stored, and then writing the data from RAM back to a contiguous block of flash memory." (A123 at Col. 1, ll. 58-64 and

40

Col. 2, ll. 1-13.)  The discussion of RAM in the specification says nothing of excluding RAM from the initial storage of received processed sound electrical signals.

## X.    CONCLUSION

Based on the foregoing, Plaintiff-Appellant e.Digital Corporation respectfully requests that this Court reverse the District Court and hold that the collateral estoppel doctrine does not apply to preclude e.Digital from arguing constructions of the "sole memory…" terms of the '774 patent and '108 patent different than that found by the court in the earlier Colorado Case.   e.Digital further requests that this case be remanded to the District Court for further proceedings consistent with this Court's opinion.

Dated:  December 27, 2013    By:

Respectfully submitted,

/s/Pamela C. Chalk
Pamela C. Chalk, Attorney of Record

HANDAL & ASSOCIATES
1200 Third Avenue, Suite 1321
San Diego, CA  92101
(619)544-6400
*Counsel for Plaintiff-Appellant*
*e.Digital Corporation*

Form 19

**FORM 19.  Certificate of Compliance With Rule 32(a)**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [          *10,243*          ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[              *MICROSOFT WORD, VERSION 14.2.5*              ] in
[              *Times New Roman, Font Size 14*              ], or

☐    The brief has been prepared in a monospaced typeface using
[    *state name and version of word processing program*    ] with [
[    *state number of characters per inch and name of type style*    ].

/s/Pamela C. Chalk
_____
(Signature of Attorney)

Pamela C. Chalk, Esq.
_____
(Name of Attorney)

Counsel for Appellant/Plaintiff, e.Digital Corporation
_____
(State whether representing appellant, appellee, etc.)

12/27/2013
_____
(Date)

Reset Fields

142

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

## E.DIGITAL CORPORATION V. FUTUREWEI TECHNOLOGIES, INC.

### 14-1019
## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the following document was caused to be served on the attorneys of record a the following address as indicated on December 27, 2013 via electronic mail and regular mail:

    1.    **CORRECTED BRIEF FOR PLAINTIFF-APPELLANT E.DIGITAL CORPORATION**

| VIA EMAIL AND REGULAR MAIL | |
|---|---|
| jpatino@foley.com<br>npisano@foley.com<br>cbolten@foley.com<br>Jose L. Patiño, Esq.<br>Nicola A. Pisano, Esq.<br>Christopher C. Bolten , Esq.<br>FOLEY & LARDNER LLP<br>3579 Valley Centre Drive, Suite 300<br>San Diego, CA 92130<br>Tel: (858) 847-6700<br>Fax: (858) 792-6773 | Attorneys and Counsel of Record for Respondents Futurewei Technologies, Inc. dba Huawei Technologies (USA) and Huawei Device USA, Inc. |

I declare that I am a member of the bar of this Court. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed this 27th day of December, 2013 in San Diego, California.

                               **HANDAL & ASSOCIATES**

Dated: December 27, 2013      By:  /s/Pamela C. Chalk_____
                                    Pamela C. Chalk
                                    Handal & Associates
                                    1200 Third Avenue Suite 1321
                                    San Diego, CA 92101
                                    Tele: (619)544-6400
                                    Fax: (619)696-0323
                                    Email: pchalk@handal-law.com

                                    Attorneys for Appellant
                                    e.Digital Corporation